## LYFORD *v.* THURSTON.

An office copy of a deed that is in the chain of title of the party producing it, is evidence; and if he produce such a copy of a deed in his opponent's chain of title and it is admitted, the verdict shall not for that cause be set aside, if that party, afterward in the trial, put in evidence his title under such conveyance.

If one having the legal estate which he has agreed to convey upon the fulfilment of certain conditions, actually conveys the land at the purchaser's request, to a third person, for his benefit, such facts furnish evidence of payment by the *cestui que trust*, so as to raise a resulting trust that may be taken by his creditors.

One who takes a conveyance of land without consideration, takes it subject to the trusts with which it stood charged in the hands of the grantor.

The testimony of a subscribing witness to a deed that he did not know the bargain on which it was given, and that he did not see any consideration paid or any security given, is competent to show that the conveyance was voluntary.

If in a real action by a tenant in common against his co-tenant *nul disseizin* be pleaded, the demandant will prevail if he show a title to an undivided part of the land.

In the return of a levy, any description of land by which its bounds
may be found, is sufficient without the metes, since these depend upon
the bounds and may be ascertained from them.

The exception of fifty acres off the southerly end of a lot, is in effect an
exception of that quantity of land separated from the remainder by a
line drawn parallel with the southerly boundary so as to exclude the
fifty acres.  .

WRIT OF ENTRY, in which the demandant claims to re-
cover a farm in Piermont.   The general issue was plead-
ed, and a verdict was ordered for the demandant subject
to the opinion of the court upon the following case.

The demandant claims under a levy of an execution
against one James Jackson, of an undivided fourth part
of the demanded premises, described in the return as "a
tract of land shown to us as the estate of the within nam-
ed James Jackson, lying in Piermont in said county of
Grafton, being the 160-acre lot No. 1 in the 4th division
in said Piermont, excepting fifty acres off the southerly
part of said lot, and being the farm on which the said
James Jackson now lives, with the buildings thereon."
Said execution issued on a judgment which was founded
on a former judgment recovered at the January term of
the Court of Common Pleas, Strafford, 1834, which last
judgment was founded on a promissory note payable to
the demandant dated August 6, 1827.

The demandant proved that one George W. Jackson
was once seized of the whole demanded premises, and
gave in evidence an office copy of a deed from the said
George to one Sally Moulton, of one undivided half of the
premises, dated September 2, 1836.

To the admission of said copy the tenant objected.  For
the purpose of showing that said conveyance was in trust
for James Jackson, the demandant called said George,
who testified that he made a contract for the purchase of
the premises in 1828 ; and it was then agreed between
him and said James, his father, that the said James should

move on to the farm and carry it on, and that George should work out to obtain money to pay for it; that the son should then convey one half of the farm to the father, and the father should convey one half of the live stock and farming tools to the son.   In pursuance of that agreement, the father moved upon the farm, and continued to occupy it until the son returned in 1836.   He then proposed to execute a deed of one half of the premises to the father, agreeably to the previous contract between them. At the suggestion of the father, to prevent the farm from being liable to attachment for his debts, the said deed to Sally Moulton was then executed.   The said Sally then lived with the said James on the farm and had continued to live there to this day,   The said James lived on the farm and managed it until his death in April 1841.

The said James, during his occupation of the farm, made some improvement upon it, and, with the aid of the said George, had built a barn upon it previous to the conveyance to the said Sally.   George had at different times let him have money amounting to more than the value of said improvements, which has never been paid.   The said James never conveyed one half of his stock and farming tools to the said George.

He received the whole income of the farm during his occupation of it.   George received no consideration for said deed except as herein stated.

The tenant offered in evidence a mortgage deed from the said Sally to him, of one moiety of said farm, dated April 23, 1838, to secure the payment of a promissory note which he produced.

The demandant then offered in evidence an office copy of a deed from the said George to the said Sally, of one undivided half of the premises, dated April 23, 1838, to the admission of which the tenant objected.

The tenant then offered in evidence a deed of the whole of said premises from said Sally to himself, dated March

26, 1840, purporting to be for the consideration of $800. A subscribing witness, by whom the execution of the deed was proved, testified that he did not know the bargain upon which it was made; that he saw no consideration paid or security given.

The tenant contended that there was not sufficient evidence of a trust for James Jackson, on which an execution could be levied; and that the tenant having the legal estate, and being in possession, and a party to no fraud, a writ of entry could not be maintained against him by the *cestui que trust.*

He also objected that the evidence showed him a tenant. in common with the demandant, and no disseizin was shown; and also that he was a *bonâ fide* purchaser for a valuable consideration.

He excepted to the levy, because the premises levied on were not described by metes and bounds.

At the time of the levy on the premises, the said James and Sally both said to the officer making the levy, that they had no interest in the premises, and that the tenant owned the farm.

Such judgment is to be rendered in this action as the Superior Court shall direct upon the consideration of the foregoing case.

*Lyford, pro se.* The inference is that the stock was worth $200, and that the land at the time of the agreement between James and George W. Jackson was worth an equal sum. The consideration, which was half the stock and the labor and attention of James in managing the farm, proceeded from James Jackson, and not from Sally Moulton. The interest therefore passed to him, which, it has been held, will pass to a creditor by force of a levy. *Scoby* v. *Blanchard*, 3 N. H. 167; *Pritchard* v. *Brown*, 4 N. H. 397; *Page* v. *Page*, 8 N. H. 187.

The half which was mortgaged by Sally Moulton to

Thurston, was the same conveyed to her by George W. Jackson on the same day. There was no consideration for the deed of 1840, and the purchase was not *bonâ fide*, and James Jackson was left in possession ; so that nothing passed as against his creditors. It does not follow that because he could maintain no action for the land, his creditors could not.

The evidence shows indeed that the plaintiff has no right beyond that of a tenant in common. But when a tenant in common is disseized by his co-tenant, as the plea of *nul disseizin* here admits, he may maintain this action to recover disseizin. Stearns on Real Actions 232 ; 5 Mass. 352.

As to the levy, the question is whether the description would be good in a deed. *Morse* v. *Dewey*, 3 N. H. 555 ; 5 Mass. 205.

If the description is perfect, and the tenant is in by a conveyance that is fraudulent as against the creditors of James Jackson, the tenant can not except to the levy. A description like this is held sufficient. 6 Greenl. 162 ; 4 Greenl. 330.

*Wilcox*, for the tenant. The demandant's title is under a levy. This is defective, that it was not by metes and bounds. " A lot of land numbered, &c., except 50 acres off the southerly end," is an insufficient description.

As to the matter of the trust. The demandant showed a deed of one half to Sally Moulton ; the tenant showed a mortgage. This is a purchase for value, and the mortgagee in possession can not be disturbed till his debt is paid. And as to the one half, the demandant did not contest the tenant's right.

The office copy of the deed was not evidence, since it was not in the chain of title of the party producing it.

In order to support the demandant's claim of a trust, James must have had such a trust as he himself could

have enforced. If it was a gift from George to Sally in trust for James, the latter could not have enforced a conveyance.

A trust which results by implication of law, is where the money paid for the land is the money of the *cestui que trust*. *Page* v. *Page*, 8 N. H. 195. Here James never paid any thing for the farm. He has lost nothing nor have his creditors. Here are no funds of his covered up. 4 E. 577 ; 2 Johns. Ch. 408 ; 4 Kent 305.

Payment to raise such a trust must be made at the time. 6 Cow. 726 ; 4 Kent 305 ; 2 J. C. 408. And if this be a resulting trust, this is not the legal remedy. The demandant has acquired no more than the equitable interest of a *cestui que trust*, which will not enable him to maintain this action against the trustee. 8 T. R. 118.

WOODS, J. Several questions arise in this case. 1. Was the office copy of the deed of George W. Jackson to Sally Moulton, of the date of the 2d of September 1836, rightly admitted ?

George W. Jackson was seized of the land in controversy, as admitted by both parties, and the plaintiff claims it through Sally Moulton as trustee of James Jackson. The conveyance to her was clearly therefore in the chain of the title which the plaintiff claims, and so upon a well settled rule of law the copy of the deed was properly admitted in evidence.

2. The next question is, whether the copy of the deed of April 23, 1838 from George W. Jackson to Sally Moulton—the same parties—was properly admitted ?

It was not in the chain of the plaintiff's title, for he does not claim the half conveyed by this deed. But the claim of the tenant is made from George W. Jackson through Sally Moulton, as his immediate grantor. So it appears upon the whole case ; the tenant claiming by virtue of a mortgage of one half of the farm, by a deed of

April 23, 1838, and also by an absolute deed of the whole dated March 26, 1840.

Now although the deed, of which a copy was offered, was not in the chain of the demandant's title, still it was in the chain of the title which the tenant claimed, and so was properly admitted. The principle is the same which governs the admission of the copy in this case, as in the case of a copy in the chain of the title of the party offering the evidence.

At the point of time when the copy was offered it was not, perhaps, competent proof: but by the tenant's offer of the subsequent deed to himself of the whole lot, it clearly became competent. It then appeared to be in the chain of title by which the defendant claimed, and so the objection that existed, if any did before exist to its use, was removed.

A verdict will not be set aside for the reason that evidence, at the time it was admitted, was incompetent, provided it became competent by the subsequent introduction of evidence, which, if previously introduced, would have paved a direct way for its introduction. That which was subject to an objection at the time when it was introduced, became relieved from the objection interposed by the subsequent act of the objector himself.

This principle has been decided and adopted in several cases, and is believed to be sound and salutary in practice. *Wiggin* v. *Damrell*, 4 N. H. 74.

3. The demandant claims the land by virtue of the levy of an execution thereon, as the property of James Jackson. He contends that notwithstanding the apparent title was in the tenant to the whole tract of land, or farm, yet that, as to one half of the farm, he was at most only a trustee of the land for the use of James Jackson; that Sally Moulton took the title from George W. Jackson in trust for James, as to one half of the lot, and that the same was conveyed to the tenant without consideration;

and so in his hands at the time of the levy was a trust estate for James Jackson, and liable for his debts; that having taken a conveyance of the land without paying any consideration for it, he took it charged with all the trusts with which it stood incumbered in the hands of his grantor.

Did Sally Moulton take the title as to one half the land, in trust for James Jackson?

The trust, if it existed, does not appear to have been evidenced by any deed of trust or by any writing disclosing it. If it existed, it was a resulting trust—a trust by implication of law arising from the fact that James Jackson had purchased and paid for the land prior to or at the date of the conveyance to Sally Moulton.

And it would seem to be a well settled rule of law, that where a person purchases land and pays the consideration money and takes a conveyance in the name of another person, the trust of the legal estate so conveyed, whether freehold or leasehold, results to the person who so makes the purchase and advances the purchase money. The existence of such trust may be proved by parol, and without any writing whatever to manifest it. *Scoby* v. *Blanchard*, 3 N. H. 170; *Pritchard* v. *Brown*, 4 do. 397; Sugden's Law of Vendors 416, 417; 2 Story's Eq. 443, 444.

The question important to be considered in this branch of the case is, whether it sufficiently appears that James Jackson purchased and paid for the land so conveyed to Sally Moulton. That he made a contract of purchase with George W. Jackson is entirely clear, and that the consideration paid for it so far as any was paid, moved from James to George W. Jackson, and not from Sally Moulton, is equally clear. She certainly paid nothing.

That some part of the stipulated consideration was performed is not open to doubt; and whether the half of the stock and tools passed upon the conveyance of the land or not, and it is by no means clear that they did not, although

it is said that James made no conveyance of them, still a consideration was paid, such as was satisfactory to George. James had been upon the farm and made improvements; and it is found by the case, that the son proposed to convey to his father according to the previous contract; but it appears that the deed was made to Sally Moulton by an agreement of the parties, and the object expressed was, that the land might not be taken by the creditors of James.

Now we think that this is to be regarded as a purchase and payment by James Jackson, and not by Sally Moulton; and superadded to that, is the fact of the express fraud evinced by the declared purpose of the parties, to keep the property in question from the creditors of James.

We regard Sally as the mere trustee of James, of the legal estate in one half the lot conveyed by George to her.

4. The tenant derives his title from Sally Moulton. By the deed of April 23, 1838, the tenant acquired a good mortgage title to one half of the lot. She at that time had the whole legal title, one half, as we have seen, in trust for James Jackson, and the other half under the deed from George of the same date with the mortgage.

The tenant claims also the other half of the lot, as well as the equity of redemption of the first half conveyed to him by virtue of a deed of March 26, 1840. It does not appear that he knew of the trust attaching to the moiety first conveyed to his grantor. His deed purports to be upon a valuable consideration, and if the case stopped here, the title of the tenant would be perfect. Having found the title apparently in Sally Moulton, and not in James Jackson at the date of his deed, the deed made a good *primâ facie* title to the tenant, and is to be regarded as presumptively upon good consideration, as expressed in its terms. The burden of proof therefore was cast upon the plaintiff to rebut the presumption in favor of the tenant.

5. To do this he offered a subscribing witness to the deed, to show a want of consideration for the deed of 1840, who

testified that he did not know the bargain upon which the deed was given, and that he did not see any consideration paid or any security given by the tenant to the grantor. This evidence was clearly competent and sufficient to the jury, and to justify the finding of a want of consideration for the deed; and we think it was sufficient to overcome the mere *primâ facie* evidence furnished by the face of the deed itself, and the acknowledgment of the receipt of the sum of money there indicated as the consideration, and from the course of the trial as indicated by the case, we infer that the tenant had no desire to trouble the jury with the finding of that fact.

Upon the case then, the deed of March 1840, is to be taken to have been without consideration. The land then is found in the hands of the tenant, charged with the trust in the same manner that it would stand charged if it still remained in Sally Moulton who received it from George.

The land then being found to be held in trust for James Jackson, if the levy of the demandant has been well made, the title was by its operation vested in the demandant to the land set off to him under it. The interest of a *cestui que trust* will pass by the extent of an execution upon the land as his property. *Scoby* v. *Blanchard*, 3 N. H. 170; *Pritchard* v. *Brown*, 4 do. 397, before cited.

6. But it is said by the tenant, that the demandant has shown himself at most to be a tenant in common with him, and so no disseizin is shown. It is no doubt true that in general the possession of one tenant in common is also the possession of his co-tenant, and is perfectly consistent with the seizin of such co-tenant. But one tenant in common may for all that disseize his fellow; and such seems to have been the case here; since by his plea of *nul disseizin*, he confesses himself in claiming the freehold. The demandant may therefore well recover, upon proving a right to the possession of an undivided part of the land.

7. It is however said, that the levy is void, by reason that the land on which it is made is not described in the return by metes and bounds as required by the words of the statute.

The land is described in the return as "a tract of land shown to us as the estate of the within named James Jackson, lying in Piermont in said county of Grafton, being the 160 acre lot No. 1, in the fourth division in said Piermont, excepting fifty acres of the southerly part of said lot, and being the farm on which said James Jackson now lives, with the buildings thereon."

The exception named in the levy is in effect, fifty acres of land taken from the southerly end of the lot by a line running parallel with the southerly boundary line of the lot. Such we think would be the proper construction to be given a like exception in a deed, and should prevail in like manner in a description in a levy.

The boundaries would then be well ascertained. The tract on which the levy is made is bounded on three sides by the lines of the lot, and on the other side by such a parallel line as has been mentioned. Metes result from boundaries; and when the latter are definitely fixed, the former are sufficiently ascertained; and the land may in such cases, we think, be said to be set off "by metes and bounds." *Buck* v. *Hardy*, 6 Greenl. 165.

The result is, the demandant is entitled to

*Judgment on the verdict.*